[Civ. No. 45720. Second Dist., Div. Two. Sept. 30, 1975.]

JOHN F. DAY et al., Plaintiffs and Appellants, v.
CITY OF GLENDALE, Defendant and Respondent;
JAMES J. KIRST et al., Real Parties in Interest and Respondents.

**COUNSEL**

Jones & Jones and Arthur T. Jones for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Nicholas C. Yost and Norman N. Flette, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Richard W. Marston, City Attorney, and Frank R. Manzano, Senior Assistant City Attorney, for Defendant and Respondent.

Melby & Anderson, Henry Melby, Monteleone & McCrory and Michael Maroko for Real Parties in Interest and Respondents.

**OPINION**

**FLEMING, J.**—John and Gertrude Day, residents of the City of Glendale, appeal the denial of a writ of mandate sought to compel respondent city to amend its environmental guidelines and require an environmental impact report as a condition for issuance of a grading permit to real-parties-in-interest Kirst-MacDonald-Hensler, a joint venture.

Real-parties-in-interest Hensler and MacDonald own 70 acres of undeveloped land in the San Raphael Hills of Glendale adjacent to the site of a proposed state highway. They joined with others to form the joint venture that won the state contract to construct the proposed highway. In March 1974 respondent City of Glendale issued a grading permit authorizing the joint venture to fill canyons on the Hensler and MacDonald land with 1,556,000 cubic yards of material to be excavated in the highway construction project. The permit also authorized grading·

and movement of 343,000 cubic yards of material to be cut from a ridge to form a notch—420 feet wide at the top, 70 feet wide at the bottom, and flanked by one-to-one grade slopes cut from 100 to 200 feet—which would permit the extension of an adjacent Glendale street into the leveled Hensler and MacDonald land.

Although city guidelines did not require preparation of an environmental impact report (EIR) for a grading permit, an EIR was presented with the application for the permit. In their petition the Days contended that the city guidelines should have required an EIR, that the submitted EIR inadequately evaluated the environmental significance of the grading project and of available alternatives, that the city allowed insufficient time for citizen comments on the EIR, and that it failed to independently evaluate the project, all in violation of the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000[1] et seq.) CEQA applies to discretionary projects approved by public agencies but does not apply to ministerial projects of a similar nature (§ 21080). The trial court found that issuance of a grading permit was for a ministerial project and concluded that CEQA did not apply. The critical issue on appeal is whether issuance of the grading permit was for a discretionary or ministerial project within the meaning of CEQA.

CEQA does not define the term *ministerial.* Instead, section 21083 requires the Secretary of the Resources Agency to adopt guidelines for interpretation by public agencies of CEQA, guidelines which must include criteria for orderly evaluation of projects and for preparation of environmental impact reports consistent with CEQA. Section 21082 requires public agencies, in turn, to adopt their own guidelines and procedures consistent both with CEQA and the guidelines of the secretary.

At the time the city issued the grading permit, the Secretary of the Resources Agency had adopted the following guidelines (Cal. Admin. Code, tit. 14, div. 6):

"15073. Ministerial Projects. Ministerial projects are exempt from the requirements of CEQA, and no EIR is required. The determination of what is 'ministerial' can most appropriately be made by the particular public agency involved based upon its analysis of its own laws, and it is anticipated that each public agency will make such determination either

---

[1]All further statutory references are to the Public Resources Code.

as a part of its implementing regulations or on a case-by-case basis. It is further anticipated that the following actions will, in most cases, be ministerial in nature.

"(a) Issuance of building permits.

"(b) Issuance of business licenses.

"(c) Approval of final subdivision maps.

"(d) Approval of individual utility service connections and disconnections.

"In the absence of any discretionary provision contained in local ordinance, it shall be presumed that these four actions are ministerial. Each public agency may, in its implementing regulations or ordinances, provide an identification or itemization of its projects and actions which are deemed ministerial under the applicable laws and ordinances." Glendale in turn adopted its own guidelines (Environmental Guidelines and Procedures of the City of Glendale):

"Section 10. *Ministerial Projects.*

"The following are ministerial projects under the ordinances of the City of Glendale and do not require the preparation of an EIR:

"A. Issuance of building permits.

"B. Issuance of business licenses.

"C. Approval of final subdivision maps.

"D. Approval of individual utility service connections and disconnections.

"E. *Issuance of grading, fill, and excavation permits.*" (Italics added.)

Respondent and real-parties-in-interest contend that the state, through CEQA and its guidelines, has delegated to local agencies the prerogative to determine which projects are ministerial and hence exempt from the requirements of CEQA. Glendale, they argue, deems grading permits ministerial, and consequently CEQA does not apply. This argument, if

valid, would eviscerate CEQA, a result clearly not intended by the Legislature. The applicability of CEQA cannot be made to depend upon the unfettered discretion of local agencies, for local agencies must act in accordance with state guidelines and the objectives of CEQA. Their actions must also reflect the stated intent of enabling legislation: "It is the intent of the Legislature that all agencies of the state government which regulate activities of private individuals, corporations, and public agencies which are found to affect the quality of the environment, shall regulate such activities so that major consideration is given to preventing environmental damage." (§ 21000, subd. (g).)

But, it is argued, issuance of a grading permit was for a ministerial project in this instance, whether or not CEQA gives local agencies absolute power to determine which projects are ministerial. We do not agree. State guidelines implementing CEQA, in consonance with standard legal formulation (see *Johnson* v. *State of California,* 69 Cal.2d 782, 788 [73 Cal.Rptr. 240, 447 P.2d 352]; *People* v. *Department of Housing and Community Development,* 45 Cal.App.3d 185, 192 [119 Cal.Rptr. 266]) offer these definitions:

"15024. Discretionary Project. Discretionary project means an activity defined as a project which requires the exercise of judgment, deliberation, or decision on the part of the public agency or body in the process of approving or disapproving a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances or regulations.

"15032. Ministerial Projects. Ministerial projects as a general rule, include those activities defined as projects which are undertaken or approved by a governmental decision which a public officer or public agency makes upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority. With these projects, the officer or agency must act upon the given facts without regard to his own judgment or opinion concerning the propriety or wisdom of the act although the statute, ordinance, or regulation may require, in some degree, a construction of its language by the officer."

The Glendale Municipal Code, chapter 23, governs the issuance of grading permits by the city engineer. The code imposes many technical and clearly ministerial requirements. But it also imposes many require-

ments that are discretionary. Important for our purposes are the following:

—after visual inspection of the grading site the city engineer may require submission of geological and soil reports with recommendations regarding the effect of geological and soil conditions on the proposed development, and those recommendations approved by the city engineer must be incorporated in the grading plan (§§ 23-15(b) and (c));

—the city engineer may impose regulations with respect to access routes to hillside grading projects "as he shall determine are required in the interest of safety precautions involving pedestrian or vehicular traffic" (§ 23-16(f));

—in granting the permit the city engineer must attach such conditions as may be necessary to prevent creation of hazard to public or private property (§ 23-16(g)(5));

—and if the city engineer determines that the land area for which grading is proposed is subject to geological or flood hazard to the extent that no reasonable amount of corrective work can eliminate or sufficiently reduce the hazard to persons or property, he must deny the grading permit (§ 23-18).

The foregoing, patently, are discretionary items without fixed standards or objective measurements and require the exercise of judgment, deliberation, and decision by the city engineer. At bench, the city engineer did exercise his discretion by attaching numerous conditions to the issuance of the grading permit.

█ CEQA must be interpreted to afford the fullest possible protection to the environment within the reasonable scope of statutory language. (*Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].) A project of mixed ministerial-discretionary character, as was the grading permit here, should be treated as a discretionary project. As was said in *People* v. *Department of Housing and Community Development,* 45 Cal.App.3d 185, 194 [119 Cal.Rptr. 266], ". . . . CEQA draws a line between purely ministerial and entirely discretionary projects but does not mention those having both characteristics. Statutory policy, not semantics, forms the standard for segregating discretionary from ministerial functions . . . . CEQA is to be interpreted to ' "afford the fullest possible protection to the environment

within the reasonable scope of the statutory language." ' . . . So construed, section 21080 extends CEQA's scope to hybrid projects of a mixed ministerial-discretionary character; doubt whether a project is ministerial or discretionary should be resolved in favor of the latter characterization."

Moreover, the discretionary-ministerial designation of a project is not necessarily determinative of its environmental impact. We do not believe the Legislature intended to exclude from the ambit of CEQA any project involving, as here, cut, movement, and fill of massive sections of earth. All parties agree that the grading project will have a significant effect on the environment. The issuance of the grading permit is the only point at which the environmental impact of the project may be publicly considered before mountains are moved and 70 acres of canyon are filled.

We note that appellants did not request a stay pending determination of this appeal, and we recognize that appropriate remedies to correct substantial error and abuse of discretion may be limited by physical realities. Yet even if the grading project planned by real parties in interest has been entirely completed, the cause must be remanded to the trial court for resolution of appellants' objections to the content of the EIR and their objections to Glendale's guidelines. Under the provisions of CEQA those affected by this major land-moving project are entitled to a full review of its environmental impact.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Roth, P. J., concurred.

**BEACH, J.**—I dissent.

The majority declares that "the critical issue on appeal is whether issuance of the grading permit was for a discretionary or ministerial project within the meaning of CEQA." I respectfully disagree for I believe that a more fundamental issue and one dispositive of this case is: "Is the ordinance of the City of Glendale unconstitutional or clearly violative of any statutory prohibition?" In my view no constitutional infirmity and no violation of any statutory prohibition has been demonstrated by appellant or amicus curiae.

The basic fundamental law, Public Resources Code section 21080,[1] clearly provides that CEQA shall apply to discretionary projects not to ministerial projects. In the (admittedly nonexclusive) listing of *discretionary* projects, section 21080, subdivision (a), does not include the issuance of a grading permit.[2] The statute authorizes and provides that guidelines shall be established and adopted by the Resources Agency of California. The guidelines thus adopted by the Resources Agency, 14 California Administrative Code, section 15032, lists projects which in most instances will be deemed *ministerial*. Again the list is not exclusive and the issuance of a grading permit is not listed. The guidelines state:

". . . The determination of what is 'ministerial' can most appropriately be made by the particular public agency involved based upon its analysis of its own laws . . . . Each public agency may, in its implementing regulations or ordinances, provide an identification or itemization of its projects and actions which are deemed ministerial under the applicable laws and ordinances." (Cal. Admin. Code, tit. 14, § 15073.)

The public agency, the City of Glendale, therefore by the combined operation of statutes and administrative guidelines is not prohibited but in fact authorized to designate what other "projects" are ministerial acts.[3] The city declared by its municipal ordinance that the issuance of a grading permit is a ministerial act. (Glendale Mun. Code, 1964, as amended pt. 2, § 10(E).)

The net effect is that the act of the City of Glendale passed an ordinance which it was not prohibited from doing and which was

---

[1] Unless otherwise indicated all section references are to Public Resources Code.

[2] As stated in the brief of the Attorney General, "The version of Assembly Bill 889 reported out by the Senate Committee on Governmental Organizations did define ministerial projects to include the issuance of grading and building permits. (A.B. 889, as amended November· 16, 1972.) However, in the final version of Assembly Bill 889 the reference to grading and building permits as being 'ministerial' in nature was deleted. (A.B. 889, as amended November 29,·1972.) Two inferences may be drawn from this fact. One is that the Legislature considered the grading and building permits as neither wholly ministerial or wholly discretionary. The other is that the Legislature intended that the decision whether the issuance of building and grading permits was a ministerial or a discretionary act should be left to the decision of each 'agency' either on a case-by-case basis or by adoption of an all-inclusive rule."

[3] That there is no difference between an "act" such as issuing a building or grading permit—(giving a piece of paper) and a "project" as a physical activity culminating in physical change to the environment, was at least implied in *Friends of Mammoth* v. *Board of Supervisors*, 8 Cal.3d 247, at page 265 [104 Cal.Rptr. 761, 502 P.2d 1049], and unquestionably determined in *Bozung* v. *Local Agency Formation Com.*, 13 Cal.3d 263, at 279 [118 Cal.Rptr. 249, 529 P.2d 1017].

contemplated by the guidelines written by the legislatively appointed agency. That exercise of its legislative power is not because of any delegation of authority to the City of Glendale by the Legislature as its subservient agency under CEQA, but because of the city's constitutional authority to do so under its charter of 1921.[4]

I agree with the majority that the act of grading especially of the scope and magnitude involved at bench is clearly an activity or project which has a direct effect on the environment. I further agree that the decision of whether or not to issue this particular grading permit viewed by any common sense standards does involve the exercise of judgment and discretion. The majority correctly lists some of the facts illustrating this. I think that reason and wisdom align themselves with the majority in determining that such grading is a significant amount of work and it affects the environment and the issuance of a grading permit for work of this magnitude requires discretion. It would be better if the ordinance did not say that it is merely a ministerial act. But, as I understand the doctrine of separation of powers, that decision is not ours to make. The Legislature has nowhere in CEQA forbidden the City of Glendale or any other municipality to decide by the legislative process what is ministerial. The Legislature could have, by preempting the field of decision with clarity of language, or perhaps by not predicating application of CEQA upon considerations or determinations of ministerial versus discretionary conduct or activity. But, "wisdom or folly," it did so. What the state Legislature has constitutionally enacted and what a municipality has thereby been permitted to supplement by its constitutionally valid enactment are matters of legislative not judicial concern.

Perhaps the acts of the secretary of the Resources Agency under the delegation provided for in section 21082 or the acts of the Office of Planning and Research under the delegation provided for in section 21083, may well be the subject of proper scrutiny under the standards of Government Code section 11374. (See *Eisenberg's W. House* v. *St. Bd. Equal.,* 72 Cal.App.2d 8 [164 P.2d 57]; *Desert Environmental Conservation Assn.* v. *Public Utilities Com.,* 8 Cal.3d 739 [106 Cal.Rptr. 31, 505 P.2d 223].)

But the review of an adjudication or of a fact finding process of an administrative agency is not before us. The Legislature may properly entrust the task of filling in the details of its statutory scheme to an

---

[4]We judicially notice the Charter of the City of Glendale.

administrative agency. While the City of Glendale may be an "agency" for the purposes of designating persons or entities to whom CEQA refers that is not to say that it is an "agency" within the meaning of quasi-judicial/quasi-legislative administrative agencies governed by Government Code section 11374. Thus the problem before us is not one where "An unconstitutional delegation of power occurs when the Legislature confers upon an *administrative* agency the unrestricted authority to make fundamental policy determinations." (Italics added.) (*Clean Air Constituency* v. *California State Air Resources Bd.,* 11 Cal.3d 801, 816 [114 Cal.Rptr. 577, 523 P.2d 617]; *Morris* v. *Williams,* 67 Cal.2d 733 [63 Cal.Rptr. 689, 433 P.2d 697].) By way of illustration, *People* v. *Department of Housing and Community Development,* 45 Cal.App.3d 185 [119 Cal.Rptr. 266], is distinguishable on this basis.

*People* v. *Department of Housing and Community Development, supra,* did not involve the act of a coordinate branch of government. There the act in question was one by the State Department of Housing having the obligation of acting upon an application for issuance of a mobile home park building permit. The court there determined that issuance of the permit had both characteristics and determined that CEQA applied. In reaching that conclusion the court did not superimpose its determination over that of, and contrary to, the decision of a legislative and coordinate branch of government.

The first part of our inquiry appears to me to be: "Did the City of Glendale have the fundamental power to pass such law?" If so, the second part of our inquiry should be: "Is it constitutionally infirm as violative of a constitutionally protected right?" If not, then we cannot strike down or limit the statute or reconstruct it because of, or to suit, our ideas of legislative purpose.

The majority opinion attacks the content of the Glendale municipal ordinance. The holding in effect says: "Issuance of a grading permit is so clearly (or at least so often) a discretionary act (reasonable minds cannot differ) that you, Glendale, simply cannot say to the contrary." In my view that result or effect, exceeds the scope of our authority even if in our opinion the ordinance is unsound and not helpful to the achievement or the purpose of the fundamental statute, CEQA.

What was said in *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990], about the review of another municipal ordinance is apposite here.

"In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government—the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact-finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. The duty to uphold the legislative power is as much the duty of appellate courts as it is of trial courts, and under the doctrine of separation of powers neither the trial nor appellate courts are authorized to 'review' legislative determinations. The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations. As applied to the case at hand, the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and, if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed. [Citations.]" (*Lockard* v. *City of Los Angeles, supra,* at p. 461-462.)[5]

Where statutory ambiguity prevails and construction is needed, there is no question but that the court performs its proper function to construe and explain words. Here, however, the Legislature did not leave the determination of ministerial versus discretionary projects for the courts alone to determine. By the process explained above, intentionally or unintentionally the Legislature left an opening in this regard with the possibility that it would be filled by the act of the municipal legislative body. That a municipal ordinance might assist in the creating of a law the fundamental outlines of which are established by the Legislature is not prohibited. The municipal council is a coordinate branch of the government. The problems posed by the case at bench illustrate the fact that the present statutory scheme is wobbly and badly in need of major repair. In an effort to assist in strengthening the statutory structure the majority and other cases would discard semantics in favor of statutory policy as the guiding light for the court's reasoning and the court's decision. The words of *People* v. *Department of Housing and Community Development, supra,* 45 Cal.App.3d 185, 194, are quoted: "Statutory policy, not semantics, forms the standard for segregating discretionary from ministerial functions." The majority continues "moreover the discretionary-ministerial designation of a project is not necessarily

---

[5] I acknowledge that decisions of recent years have taken much wind out of the sails of this pilot ship of judicial conduct. However, I deem it still seaworthy.

determinative of this environmental impact." I agree with this second observation but unfortunately the Legislature has used that very standard to determine the *applicability* of CEQA. Maybe the Legislature did not intend that all acts should be determined as one or the other but the words are clear "This division shall not apply to ministerial projects proposed to be carried out or approved by public agencies." (§ 21080, subd. (b).)

The majority indicates that the argument, that local agencies have the prerogative to determine which projects are ministerial and hence exempt from the requirements of CEQA, "if valid would eviscerate CEQA, a result clearly not intended by the Legislature." The majority indicates that therefore the actions of local agencies must reflect the stated intent of the enabling legislation. It is precisely because of the possible result envisioned by the majority, that the statutory scheme needs correction. That is however a legislative task. Even if the provision of the act did not affirmatively authorize, nothing prohibits the city from making laws which it deems implement the statute. In seeking to answer the problems in this area the courts cannot ignore rules of judicial limitations in considering legislative acts. The objective of CEQA and the intent of the Legislature reaches far and sweeps broadly. It drastically affects long honored and established rules of ownership of property.

Where the exercise of police power is such that it significantly and drastically makes new inroads upon constitutionally protected rights of private ownership of property, that effect is as equally important a consideration for the court as is any noble purpose of the legislation.[6] That consideration should persuade the court that in such case rescue from the unexpected and undesired effects of its own statutory scheme is the Legislature's own job.

Justice Sullivan in his scholarly dissent in *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, said at page 286 [104 Cal.Rptr. 761, 502 P.2d 1049]: "I, as well as the majority, am conscious of the profound need to improve and maintain the quality of California's environment [citation], but settled principles of statutory construction cannot be set aside by the judiciary in order to achieve that high purpose." That

---

[6]Is not all legislation presumably aimed at a worthy purpose?

statement relative to principles of statutory construction, applies equally well to principles of scope of judicial power.

I would affirm the judgment of the superior court.

A petition for a rehearing was denied October 28, 1975, and the petition of the real parties in interest and respondents Kirst-MacDonald-Hensler for a hearing by the Supreme Court was denied November 25, 1975. Clark, J., was of the opinion that the petition should be granted.