[Civ. No. 36685. First Dist., Div. One. May 18, 1976.]

REX MYERS et al., Plaintiffs and Appellants, v.
THE BOARD OF SUPERVISORS OF SANTA CLARA COUNTY,
Defendant and Respondent;
DORIS HARTLEY, Real Party in Interest and Respondent.

414

416

## COUNSEL

Bruce Tichinin in pro. per., and for Plaintiffs and Appellants.

William M. Siegel, County Counsel, and James T. Rohner, Deputy County Counsel, for Defendant and Respondent.

Albert T. Vogel, Jr., for Real Party in Interest and Respondent.

## OPINION

**WEINBERGER, J.\***—Plaintiffs and appellants, pursuant to Code of Civil Procedure section 1094.5, petitioned the Superior Court in and for

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the County of Santa Clara for a writ of mandate requesting the court to command the respondent Board of Supervisors of the County of Santa Clara to rescind, void, and annul its resolution of January 23, 1974, granting minor land division approval to Doris Hartley, real party in interest, and to direct that an environmental impact report (EIR) be prepared concerning Hartley's application before approval of the proposed division is again considered.

The matter was heard and submitted for decision and, on August 30, 1974, judgment was entered denying the peremptory writ of mandate and discharging the alternative writ theretofore granted. This appeal is from the judgment denying the peremptory writ.

Appellants contend that respondent board refused to prepare, or cause to be prepared, an EIR though the proposed land division may have numerous significant effects on the environment; that no findings of fact were made showing that the creation of new land parcels did not conflict with the Environmental Quality Act of 1970 (CEQA) (Pub. Resources Code, §§ 21000-21176), the Conservation Element of the General Plan for Santa Clara County, and with the Urban Development/Open Space Plan for Santa Clara County. Principally the appellants question the propriety of classifying "minor land divisions" as categorically exempt from the requirements of CEQA.

Real party in interest, Doris Hartley, is the purchaser under a contract of sale of approximately 8.1 acres of land adjoining Willow Springs Road in an unincorporated area of Santa Clara County. She is also the record owner and occupant of an adjacent parcel of land consisting of approximately 3.5 acres which also fronts on Willow Springs Road. Appellants are neighbors of Hartley residing between Hartley's lands and the Chesbro Reservoir.

On June 4, 1973, Hartley submitted an application for a minor land division to the Land Development Committee of Santa Clara County seeking permission to divide her eight-acre parcel into three lots pursuant to the minor land division ordinance of the county. On July 3, 1973, the committee duly heard the application and after imposing certain conditions precedent to the approval of the application, determined that the land division would not have a significant effect on the environment and was a Class 4 categorical exemption. (See Cal. Admin. Code, tit. 14, § 15104.) The committee refused to grant a continuance to

permit appellants to file a brief. On July 13, 1973, the decision of the land development committee was appealed to the Planning Commission of Santa Clara County which heard the matter on November 1, 1973, taking evidence and hearing argument, including the opposition brief filed by the appellants. The commission thereafter modified the action of the land development committee and required the merger of Lot 1 of the three lots with the adjoining parcel owned by the real party in interest, and approved the division of the remainder of the land into Lots 2 and 3 as depicted on the original application and tentative map. Appellants appealed the decision of the planning commission to the Santa Clara County Board of Supervisors on November 16, 1973, and were granted a public hearing on January 9, 1974.

The board of supervisors approved the tentative map submitted by the real party in interest showing a merger of Lot 1 of the original 8.1-acre parcel with the adjoining Parcel C owned and lived upon by the real party in interest, and the division of the remaining land into Lots 2 and 3, and denied the appeal of appellants as to such land division. Appellants then petitioned for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 which was denied by the Santa Clara County Superior Court as aforesaid on August 30, 1974.

To implement its announced policy that "the long-term protection of the environment . . . be the guiding criterion in public decisions" (Pub. Resources Code, § 21001, subd. (d)), the Legislature requires local agencies, such as respondent board (Pub. Resources Code, § 21062) to consider an EIR on any project they intend to carry out or approve which may have a significant effect on the environment (Pub. Resources Code, § 21151). The definition of a "project" is quite broad, encompassing all activities undertaken directly by public agencies or involving the issuance of any entitlement for use to a private person. (Pub. Resources Code, § 21065, subd. (c).)

The legislative plan exempts certain projects. Public Resources Code section 21080, subdivision (b), exempts all ministerial projects proposed to be carried out or approved by public agencies. Additionally, all discretionary projects which do not have a significant effect on the environment are exempt. (Pub. Resources Code, §§ 21151, 21084, 21085.)

Public Resources Code section 21083 directs the Office of Planning and Research to prepare and develop guidelines for the implementation of CEQA by public agencies. Public Resources Code section 21084

directs that the guidelines prepared and adopted pursuant to section 21083 shall include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall be exempt from the provisions of CEQA, and requires that the Secretary of the Resources Agency make a finding that projects so listed or classified do not have a significant effect on the environment and are categorically exempt.

These guidelines were duly promulgated as set forth in title 14, California Administrative Code, section 15000 et seq., known as "State EIR Guidelines" and are binding on all public agencies. The Secretary of the Resources Agency found that among the classes of projects that do not have a significant effect on the environment is Class 4, entitled "Minor Alterations to Land," consisting of "minor public or private alterations in the condition of land, water and/or vegetation which do not involve removal of mature, scenic trees except for foresty [*sic*] and agricultural purposes. Examples include but are not limited to: [¶] (a) Grading on land with a slope of less than 10 percent, except where it is to be located in a waterway, in any wetland; in an officially designated (by Federal, State or local governmental action) scenic area, or in officially mapped areas of severe geologic hazard. [¶] (b) New gardening or landscaping. [¶] (c) Filling of earth into previously excavated land with material compatible with the natural features of the site. [¶] (d) Minor alterations in land, water and vegetation on existing officially designated wildlife management areas or fish production facilities which result in improvement of habitat for fish and wildlife resources or greater fish production; [¶] (e) Minor temporary uses of land having negligible or no permanent effects on the environment, including carnivals, sales of Christmas trees, etc. [¶] (f) Minor trenching and backfilling where the surface is restored." (Cal. Admin. Code, tit. 14, § 15104.)

Public agencies in the course of establishing their own procedures are directed to "list those specific activities which fall within each of the exempt classes, subject to the qualification that these lists must be consistent with both the letter and the intent expressed in the classes." (Cal. Admin. Code, tit. 14, § 15100.4.)

The County of Santa Clara, purporting to be acting pursuant to the State EIR Guidelines, adopted its Environmental Administrative Handbook which lists specific projects which fall into exempt classes called "Categorical Exemptions" including, under Class 4(a)(6), "minor land

divisions." (County of Santa Clara Environmental Administrative Handbook, art. 3, § 3.7, Class 4(a)(6), pp. 19-20.)

The earliest determination that the subject land division is categorically exempt from CEQA under the county administrative handbook classification was made by the land development committee, without considering appellants' contention that an EIR was required. The planning commission agreed to hear the appeal from the land development committee's decision, despite advice from its counsel that such appeal should have been directly to the board of supervisors. The planning commission modified the committee's decision and then approved the modified land division, stating, among other things, that as regards EIR, the project was "class exempt/class 4." The board of supervisors made no specific findings as to its reason for approving the real party in interest's tentative map other than stating in its resolution of January 23, 1974, "that the proposed minor land division of two additional lots will not significantly affect the environment, will not be in conflict with the Open Space Element of the County's General Plan, will not impair the integrity and character of the Zoning District, and will not be detrimental to public health, safety or general welfare." The transcript of the hearing before the board indicates that the main discussion concerned whether an EIR was required for this minor land division. The board acted on the advice of its counsel that the project was categorically exempt and required no EIR. This was the decision challenged in the proceedings for the peremptory writ of mandate.

"The principles to be applied in this case have been expounded in *No Oil, Inc.* v. *City of Los Angeles* [1974] 13 Cal.3d 68, where the court observed, 'This appeal, the first case arising under the California Environmental Quality Act (hereafter CEQA) (Pub. Resources Code, § 21050 et seq.) to reach this court since *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 . . ., compels us to inquire into how an agency should decide whether a pending project requires an EIR.' (13 Cal.3d at p. 73, fn. omitted.) The court continued, 'In CEQA, the Legislature sought to protect the environment by the establishment of administrative procedures drafted to "Ensure that the long-term protection of the environment shall be the guiding criterion in public decisions." (Pub. Resources Code, § 21001, subd. (d).) To achieve these objectives, CEQA and the guidelines issued by the State Resources Agency to implement CEQA establish a three-tiered structure. If a project falls within a category exempt by administrative regulation (see

Pub. Resources Code, §§ 21084, 21085), or "it can be seen with certainty that the activity in question will not have a significant effect on the environment" (Cal. Admin. Code, tit. 14, § 15060), no further agency evaluation is required. If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study (Cal. Admin. Code, tit. 14, § 15080); if that study demonstrates that the project "will not have a significant effect," the agency may so declare in a brief Negative Declaration. (Cal. Admin. Code, tit. 14, § 15083.) If the project is one "which may have a significant effect on the environment," an EIR is required. (Pub. Resources Code, §§ 21100, 21151; see Cal. Admin. Code, tit. 14, § 15080.)' (*Id.,* p. 74. [Citation].)" (*Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 413 [124 Cal.Rptr. 339].)

In the instant case the trial court found that, "Pursuant to the State Guidelines, the County of Santa Clara, by resolution, has listed specific projects which fall into exempt classes called 'categorical exemptions,' including at Class IV, section 4(a)(6) a categorical exemption, 'Minor Land Divisions,' " and "The County of Santa Clara conformed to the California Environmental Quality Act, State Guidelines and County Environmental Handbook in giving the subject project an environmental clearance as a categorical exemption when it approved the minor land division herein."

The parties agree that judicial review of these findings is governed by Public Resources Code section 21168, which makes Code of Civil Procedure section 1094.5 applicable to the determination of whether there has been compliance with the provisions of CEQA. Since the land development committee, the planning commission, the board of supervisors, and the court below assumed that "minor land divisions" were properly within the Class 4 categorically exempt projects our first inquiry should be, did the County of Santa Clara, in fact, conform to CEQA and State EIR Guidelines in giving the subject project environmental clearance as a categorical exemption?

In *Day* v. *City of Glendale* (1975) 51 Cal.App.3d 817 [124 Cal.Rptr. 569], the City of Glendale adopted its own environmental guidelines which classified "Issuance of grading, fill and excavation permits" as a ministerial project within the meaning of State EIR Guidelines section 15073, accordingly requiring no EIR. To the argument that the state has delegated authority to local agencies to determine which projects are ministerial, and that the determination by the City of Glendale that grading permits are such projects is conclusive, the court replied: "This

argument, if valid, would eviscerate CEQA, a result clearly not intended by the Legislature. The applicability of CEQA cannot be made to depend upon the unfettered discretion of local agencies, for local agencies must act in accordance with state guidelines and the objectives of CEQA. Their actions must also reflect the stated intent of enabling legislation: 'It is the intent of the Legislature that all agencies of the state government which regulate activities of private individuals, corporations, and public agencies which are found to affect the quality of the environment, shall regulate such activities so that major consideration is given to preventing environmental damage.' (§ 21000, subd. (g).)" (*Id.,* at pp. 821-822.)

█ In the instant case it is concluded that the inclusion of minor land divisions in the Santa Clara County Environmental Handbook as a Class 4(a)(6) categorical exemption did not conform to CEQA and State EIR Guidelines.

█ State EIR Guidelines section 15104 exempts "minor public or private alterations in the *condition* of land, water and/or vegetation. . . ." (Italics added.) The examples listed thereunder all refer to various types of minor alterations in the condition of land with the exception of subdivision (e) which exempts minor temporary uses of land such as for carnivals and sales of Christmas trees. Exempting a land division, whether denominated major or minor, which involves an alteration in the permanent *use* of land is not "consistent with both the letter and the intent expressed in the classes." (Cal. Admin. Code, tit. 14, § 15100.4.) █ The unquestioned purpose of the real party in interest in the instant case was to create three new parcels of land for use as homesites. It was formerly used for grazing cattle. It is quite clear that the proposed land division involves something different from a minor alteration in the *condition* of land. It is completely unlike any of the examples listed in State EIR Guidelines section 15104.

More appropriate to minor alterations in land *use* limitations is State EIR Guidelines section 15105 which describes Class 5 exemptions as follows: "Class 5 consists of minor alterations in land use limitations, except zoning, including but not limited to: [¶] (a) Minor lot line adjustments, side yard and set back variances *not resulting in the creation of any new parcel nor in any change in land use or density*; [¶] (b) Issuance of minor encroachment permits." (Italics added.) It is noteworthy that under this classification minor lot line adjustments resulting in the

creation of any new parcel or in any change in land *use* or density are excluded from otherwise categorically exempt minor lot line adjustments.

■ Public Resources Code section 21080 provides that except as otherwise provided, "this division [CEQA] shall apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, . . . the issuance of conditional use permits and the *approval of tentative subdivision maps* . . . . [¶] (b) This division shall not apply to ministerial projects proposed to be carried out or approved by public agencies." (Italics added.) Counsel for real party in interest asserts, "The clearly stated purpose of the section [21080] is to distinguish discretionary from ministerial projects and to include the cited examples in discretionary projects." We do not so read section 21080. Counsel also acknowledges that "the word 'subdivide' is not a technical term and can relate to any division of land if so intended." (*Welch* v. *Kai* (1970) 4 Cal.App.3d 374, 380 [84 Cal.Rptr. 619].) He then argues that the Legislature's use of the words "approval of tentative subdivision maps" is persuasive of its desire to use "subdivision" in the restrictive sense of the Subdivision Map Act. (Gov. Code, §§ 66411, 66424, 66426.) We are not persuaded by anything in CEQA that "subdivision," as used in Public Resources Code section 21080, would not include a division of an 8.1-acre parcel into 3 smaller parcels.

■ It is concluded, for the reasons stated, that the trial court erred in finding that the subject land division is categorically exempt from the requirements of CEQA, and that the County of Santa Clara acted pursuant to State EIR Guidelines in adopting Santa Clara Environmental Administrative Handbook, article 3, section 3.7, Class 4(a)(6) at pages 19 and 20. ■ "Minor land divisions" is not properly listed as an example of the type of projects categorically exempt under Class 4 (Cal. Admin. Code, tit. 14, § 15104), it is inconsistent with Class 5 (Cal. Admin. Code, tit. 14, § 15105) and violates the express mandate of Public Resources Code section 21080. Rather than fitting into any of the existing classes of exempt projects, "minor land divisions" is a new class not validly adopted in accordance with the requirements of Public Resources Code section 21086[1] dealing with the manner in which categorically

---

[1] "§ 21086. A public agency may, at any time, request the addition or deletion of a class of projects, to the list designated pursuant to Section 21084. Such a request shall be made in writing to the Office of Planning and Research and shall include information

exempt classes of projects may be added to or deleted from the lists of projects designated pursuant to the requirements of CEQA.

■ Following the determination that the subject project is not categorically exempt under law or administrative regulation, attention is directed to State EIR Guidelines section 15060 reading as follows: "The requirements set forth in these Guidelines apply to projects which *may* have a significant effect on the environment and which involve discretionary governmental action. *Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not covered by the requirements set forth in CEQA,* and these Guidelines concerning the evaluation of projects and the preparation and review of environmental documents do not apply." (Italics added.)

This general rule is phrased in absolute terms ("with *certainty* that there is no *possibility*") for a definite reason. The Office of Planning and Research, pursuant to legislative authorization (Pub. Resources Code, §§ 21083, 21084, 21085), prepared guidelines which include a list of 12 classes of projects which, because they are categorically exempt, do not come within the purview of CEQA. To guard against the possibility that some obviously exempt type of project, which was not listed in compiling the categorical exemptions, might be required needlessly to comply with the requirements of CEQA, State EIR Guidelines section 15060 was promulgated. We are of the opinion that it is intended to apply only in those situations where its absolute and precise language clearly applies.

■ The subject project involves the possible construction of 2 dwellings on adjoining lots of over 2.5 acres each in a rural area. Superficially such project would not seem to pose any serious threat to the environment. In *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], decided before the State EIR Guidelines were developed by the Office of Planning and Research

supporting the public agency's position that such class of projects does, or does not, have a significant effect on the environment. [¶] The Office of Planning and Research shall review each such request and, as soon as possible, shall submit its recommendation to the Secretary of the Resources Agency. Following the receipt of such recommendation, the Secretary of the Resources Agency may add or delete the class of projects to the list of classes of projects designated pursuant to Section 21084 which are exempt from the requirements of this division. [¶] The addition or deletion of a class of projects, as provided in this section, to the list specified in Section 21084 shall constitute an amendment to the guidelines adopted pursuant to Section 21083 and shall be adopted in the manner prescribed in Sections 21083, 21084, and 21087."

for adoption in accordance with Public Resources Code section 21083, the court stated at page 272: "[C]ommon sense tells us that the majority of private projects for which a government permit or similar entitlement is necessary are minor in scope—e.g., relating only to the construction, improvement, or operation of an individual dwelling or small business —and hence, *in the absence of unusual circumstances,* have little or no effect on the public environment. Such projects, accordingly, may be approved exactly as before the enactment of the EQA." (Italics added.)

Respondents rely on the quoted language to support their argument that the subject project is entitled to approval exactly as before the enactment of CEQA. But appellants have consistently urged that the unusual circumstances surrounding the proposed land division supply the substance and rationale of their opposition to it. Thus, they assert that unlike ordinary individual dwellings each dwelling in this project presents the following unusual circumstances:

(a) It requires the cutting of an extensive road scar, the placing of residential structure storm drainage improvements and utility poles on steep terrain or across a stream, in an area which is now in a natural condition, and whose public value is recognized by the designation of the road adjoining it as an official county scenic highway;

(b) The existence of grading on a steep hillside presents the likelihood, recognized in the conservation element of the county general plan, of soil eroding away from the grading cuts, down the hillside into the stream creating siltation pollution there and in downstream Chesbro Reservoir;

(c) Four hundred to eight hundred-foot-long septic tank leach lines from the residences must be run down the hillside and either into and across the creek or along its banks creating the danger of sewage seeping into the stream and polluting it, Chesbro Reservoir and appellant Wilsons' downstream domestic water well;

(d) The water supply system "does not meet fire protection standards (American Insurance Association)" and the health department notes that even a substandard supply is "difficult to develop in this area," all creating a hazard of severe fire on the steep, thickly forested hill;

(e) At least 9 specimen, scenic oak trees will be removed and 8,400 square feet of brush and cover must be graded away.

These explicit claims, even if exaggerated or untrue, are sufficient to remove the subject project from the class "Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, . . ." (Cal. Admin. Code, tit. 14, § 15060.)

We conclude that the facts in the instant case do not bring it within the first tier of the three-tiered structure described in *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68 [118 Cal.Rptr. 34, 529 P.2d 66]. The next tier is stated thus at page 74: "If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study (Cal. Admin. Code, tit. 14, § 15080); if that study demonstrates that the project 'will not have a significant effect,' the agency may so declare in a brief Negative Declaration (Cal. Admin. Code, tit. 14, § 15083)." None of the administrative bodies connected with the Hartley application for a minor land division filed a negative declaration. Thus, if the project is one "which may have a significant effect on the environment" (Pub. Resources Code, §§ 21100, 21151), an EIR may be required.

The appellants have maintained from their first appearance before the county land development committee until the present that an EIR must be prepared in the instant case. If the project is not categorically exempt from the requirements of CEQA, as we have found it not to be, State EIR Guidelines section 15080 provides that "the Lead Agency should conduct an initial study to determine if the project may have a significant effect on the environment. If any of the effects of a project may have a substantial adverse impact on the environment, regardless of whether the overall effect of the project is adverse or beneficial, then an environmental impact report must be prepared where discretionary governmental action is involved. [¶] If the project is to be carried out by a non-governmental person, the Lead Agency may require such person to submit data and information which will enable the agency to make this determination."

The guidelines to be followed by the lead agency in making its determination of whether the project may have a significant effect on the environment are contained in State EIR Guidelines section 15081 reading in part as follows: "The determination of whether a project may have a significant effect on the environment calls for careful judgment on the part of the public agency involved, based to the extent possible on scientific and factual data. An iron clad definition of significant effect is

not possible because the significance of an activity may vary with the setting. *For example, an activity which may not be significant in an urban area may be significant in a rural area.* There may be a difference of opinion on whether a particular effect should be considered adverse or beneficial, but where there is, or anticipated to be, a substantial body of opinion that considers or will consider the effect to be adverse, the lead agency should prepare an EIR to explore the environmental effects involved." (Italics added.)

Whether, in the case at bench, a negative declaration should be filed or an EIR prepared must be determined in accordance with the provisions of CEQA and the state guidelines. Code of Civil Procedure section 1094.5, subdivision (b) makes reference to abuse of discretion by the administrative agency being established if "the order or decision is not supported by the *findings,* or the *findings* are not supported by the evidence." (Italics added.) For the reason that the land development committee and the planning commission assumed that the subject land division was categorically exempt from CEQA, no findings were prepared at that level. The findings of the board of supervisors consisted of a resolution couched solely in the language of the applicable statutes. Such traditional administrative practice was specifically disapproved in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].

Respondents Hartley and board of supervisors argue that *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68, holds that CEQA does not require written findings in support of local agency decisions under its provisions, and that *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856], permits approval of subdivision maps on the basis of an express finding that simply states that the subdivision is consistent with the local general plan.

The case of *No Oil, Inc.* holds that "Neither CEQA nor Code of Civil Procedure section 1094.5 require rendition of findings of fact in *quasi-legislative* proceedings; . . ." (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68 at p. 81, fn. 12, italics added.) The facts in *No Oil, Inc.* involved the quasi-legislative action of the enactment of ordinances permitting the drilling of test oil wells in an urban area. The instant case involves the *quasi-judicial* function of approval of a land division map. In *No Oil, Inc.* the review was under traditional, as opposed to administrative, mandamus, and the sufficiency of findings was really not an issue as is disclosed by the following: "We do not question the power of a trial

court to remand a matter to an administrative agency for clarification of ambiguous findings. [Citation.] This doctrine, however, does not apply to the present case. This is not a case in which an agency rendered ambiguous findings concerning the environmental effect of the project, but a case of total absence of any written determination on the matter; for all the record reveals, the council may have simply ignored CEQA and enacted the ordinances in the same manner to which it was accustomed before CEQA was enacted." (*No Oil, Inc.* v. *City of Los Angeles, supra,* at p. 81.) The adequacy of the findings contained in the board of supervisors' resolution in the instant case is clearly at issue, and all parties agree that review of respondent board's decision is properly within the ambit of administrative mandamus as set forth in Code of Civil Procedure section 1094.5. In that context *Topanga* holds: "We further conclude that implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506 at p. 515.)

 The case of *Woodland Hills* is factually distinguishable from the instant case but to the extent that it is applicable it follows *Topanga,* holding that "Failure by the council . . . to make findings to support its ultimate decision resulted in inability of a reviewing court to bridge the analytic gap between the evidence and the ultimate decision of the council . . . ." (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 44 Cal.App.3d 825 at p. 838.) The court then remanded the matter "for proceedings in the manner required by law . . . with respect to finding whether the proposed subdivision map is consistent with . . . the general plan . . .; and as required by the case of *Topanga* . . ., with respect to making findings." (*Id.,* at p. 838-839.)

It is concluded that in the instant case the lead agency or the board of supervisors must make findings, either in the form of a negative declaration or an EIR to permit a reviewing court to bridge the analytic gap between the evidence and the ultimate decision.

 In *San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596 [122 Cal.Rptr. 100], the court, citing *Topanga,* stated, "In the absence of a statutory requirement, administrative findings will be deemed adequate if they are sufficient to apprise interested parties and the courts of the bases for the administrative action." (See also *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d

867, 873 [206 P.2d 355].) Administrative findings need not be stated with the formality required in judicial proceedings. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506 at p. 517, fn. 16; *Swars* v. *Council of City of Vallejo, supra,* at p. 872; *County of Santa Barbara* v. *Purcell, Inc.* (1967) 251 Cal.App.2d 169, 177 [59 Cal.Rptr. 345].)

In the instant case, the interested parties and the courts have not been adequately apprised of the reasons for the administrative action. The record discloses that the land development committee, the planning commission and the trial court relied primarily upon the erroneous assumption that "minor land divisions" were properly included as Class 4 categorically exempt projects. It is noteworthy that in a letter dated October 25, 1973, addressed to the planning commission, the principal planner stated, "While we have not attempted to ascertain the accuracy of the facts presented in the [appellants'] Brief relevant to the environmental problems that may be created by this proposed land division, it would appear that if the facts are correct, an environmental impact assessment should have been prepared and perhaps an EIR." The land development committee approved the land division without reviewing appellants' brief, and though appellants were permitted to voice their fears of an adverse environmental effect before the planning commission and the Santa Clara County Board of Supervisors, the resolution of the latter, in conclusionary statutory language, affords no inkling of the reasoning process by which the gap between the raw evidence and the decision was bridged. It cannot be determined from the record whether the appellants' generally pessimistic view regarding the proposed project is well founded or not.

We make no determination whether or not the responsible agency in the instant case should file a negative declaration or prepare an EIR. Every project which has an effect on the environment is not necessarily one for which an EIR must be prepared. It is established that a negative declaration will be sustained unless as a matter of law it appears that the project as a whole will have a substantial adverse impact on the environment. (See *Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 724-726 [117 Cal.Rptr. 96]; *Hixon* v. *County of Los Angeles* (1974) 38 Cal.App.3d 370, 379-382 [113 Cal.Rptr. 433].)

In *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68 at page 86, the court observed: "One major purpose of an EIR is to inform

other government agencies, and the public generally, of the environmental impact of a proposed project [citations], and to demonstrate to an apprehensive citizenry that the agency has in fact analyzed and considered the ecological implications of its action. A simple resolution or Negative Declaration, stating that the project will have no significant environmental effect, cannot serve this function." This is the complete answer to respondents' claim that the findings of the board of supervisors and the court below that the land division would have no significant environmental effect is sufficient compliance with *Topanga.*

■ For the reasons that the government agencies involved failed to comply with the provisions of CEQA and to adhere to the salutary rule announced in *Topanga,* the case at bench requires reversal. Accordingly no useful purpose would be served by addressing the other contentions urged by appellants. When the government agencies involved comply with the provisions of CEQA and the State EIR Guidelines the public generally and, in particular, the apprehensive citizenry represented by appellants will know that the agencies have in fact analyzed and considered the ecological implications of their action.

It is of course possible to misuse beneficent legislation, and reports of certain persons connected with Santa Clara County planning agencies suggest that appellants herein may be more concerned with perpetuating their present isolation or other ulterior purposes than in protecting the environment. But what is most clearly demonstrated by the instant case is the reluctance of local agencies to acknowledge as real the dangers to the environment which compelled the Legislature in 1970 to enact emergency legislation. One of the easiest methods for evading CEQA is by misclassifying projects as "categorically exempt," as in the instant case, or as "ministerial" as was done in *Day* v. *City of Glendale, supra,* 51 Cal.App.3d 817. Both misuse and nonuse of the legislation intended to "Develop and maintain a high-quality environment now and in the future" (Cal. Admin. Code, tit. 14, § 15011, subd. (a)) may be avoided by complying strictly with the provisions of Public Resources Code sections 21000 through 21176 and California Administrative Code, title 14, section 15000 et seq.

The judgment appealed from is reversed and the trial court is directed to grant the peremptory writ commanding the Board of Supervisors of the County of Santa Clara to rescind, void and annul its resolution of January 23, 1974, granting approval of real party in interest's application for subdivision and directing said board of supervisors to return said

application to the appropriate local agency for processing in accordance with the views herein expressed.

Sims, Acting P. J., and Elkington, J., concurred.