Filed 6/28/18; pub. order 7/27/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA WATER IMPACT NETWORK,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>COUNTY OF SAN LUIS OBISPO et al,<br><br>    Respondents,<br><br>JUSTIN VINEYARDS AND WINERY, LLC et al.<br><br>    Real Parties in Interest and Respondents. | 2d Civil No. B283846<br>(Super. Ct. No. 16CVP-0195)<br>(San Luis Obispo County) |

The County of San Luis Obispo (County) issues well permits without conducting a California Environmental Quality Act (CEQA) review. Appellant California Water Impact Network petitioned for a writ of mandate to compel County to comply with CEQA. County asserted that well permits are ministerial actions

exempt from CEQA. The trial court agreed with County and dismissed appellant's petition on demurrer.

Appellant relies on Chapter 8.40 of the San Luis Obispo County Code, which is intended to prevent groundwater pollution or contamination during well construction. We conclude that issuance of a well permit is a ministerial action under the ordinance. If an applicant meets fixed standards, County must issue a well permit. The ordinance does not require use of personal or subjective judgment by County officials. There is no discretion to be exercised. CEQA does not apply. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2016, County issued permits to construct wells on land belonging to four agricultural enterprises, who are the real parties in interest (RPIs).[1] RPIs' operations, mostly vineyards, are 160 acres to over 400 acres in size. The well depths range from 500 to 1000 feet. County authorized the wells without conducting a CEQA review.

Appellant petitioned for a writ of mandate, challenging RPIs' well permits. As amended, the petition alleges that County made a discretionary decision to issue permits allowing RPIs to extract groundwater; this requires environmental review under CEQA. The petition states, "As a result of its de facto policy of processing all well permit applications as ministerial, the County has conducted no analysis whatsoever of the cumulative impacts associated with its ongoing approval of several dozen, if not hundreds, of well construction permits over the past several years."

---

[1] RPIs are Lapis Land Company, LLC; Justin Vineyards and Winery, LLC; Paso Robles Vineyards, Inc.; and Moondance Partners, LP.

2

Appellant alleges that County "prejudicially abused its discretion by approving the well permits without first evaluating whether it may have significant individual or cumulative impacts on the environment, in violation of CEQA." The petition requests an order directing County to set aside its actions in issuing well permits and comply with CEQA before approving or denying the well applications.

County and RPIs demurred. They argued that CEQA does not apply to the issuance of well construction permits, a purely ministerial function under County ordinance. County asserted that the only issue with respect to well construction relates to water *quality*, to prevent contamination of groundwater; depletion of groundwater supply *quantity* is not an issue. In County's view, a permit must be approved once it determines that the applicant is a licensed drilling contractor who will comply with the technical requirements specified by ordinance.

Appellant countered that County bypassed public disclosure of potentially significant impacts to groundwater resources by characterizing its review of well applications as purely ministerial, failing to evaluate the severity of the impacts and identify mitigation measures with the benefit of public review and comment. Appellant asserted that County has broad discretion to impose environmental conditions on well permits, beyond the objective requirements specified in state Department of Water Resources (DWR) Bulletins.

The trial court concluded that the standards for issuing a well drilling permit are ministerial, with no discretion to shape a project to address environmental concerns. Accordingly, CEQA did not apply. The court sustained the demurrers and entered judgment for respondents.

3

# DISCUSSION

### 1. *Review*

Review is de novo. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We examine the petition and the governing ordinance to determine whether County had a duty to conduct a CEQA review, or whether issuing a permit is a ministerial act exempt from CEQA. (*San Bernardino Associated Governments v. Superior Court* (2006) 135 Cal.App.4th 1106, 1113-1114 [demurrer was properly sustained as a matter of law because an agency's action was ministerial].)

### 2. *Overview: State Water Policy Principles*

State policy requires that water resources be put to beneficial use. Our Constitution declares that "the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare." (Cal. Const., art. X, § 2.) Use of water for domestic purposes and irrigation is considered beneficial. (Wat. Code, § 106.)

Groundwater belongs to the state, "but may be extracted by those with the right to do so, including those whose land overlies the groundwater source." (*Delaware Tetra Technologies, Inc. v. County of San Bernardino* (2016) 247 Cal.App.4th 352, 358.) Local agencies manage the appropriation of groundwater through a permitting system. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 278.)

4

### 3. Discretionary vs. Ministerial Acts

CEQA applies to projects subject to discretionary approval by the government; it does not apply to ministerial acts. (Pub. Res. Code, § 21080, subds. (a), (b)(1).) A project is an activity that may cause either a direct physical change in the environment, or a reasonably foreseeable indirect change (*Id.*, § 21065) with "tangible physical manifestations that are perceptible by the senses." (*Martin v. City and County of San Francisco* (2005) 135 Cal.App.4th 392, 403.)

A discretionary project "requires the exercise of judgment or deliberation"; it does not encompass situations where the agency "merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations." (Cal. Code Regs., tit. 14, § 15357.)

A ministerial action is one "involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project. The public official merely applies the law to the facts as presented but uses no special discretion or judgment in reaching a decision. A ministerial decision involves only the use of fixed standards or objective measurements, and the public official cannot use personal, subjective judgment in deciding whether or how the project should be carried out." (Cal. Code Regs., tit. 14, § 15369.)

The legislative rationale for excluding purely ministerial projects from CEQA "implicitly recognizes that unless a public agency can shape the project in a way that would respond to concerns raised in an EIR [Environmental Impact Report] . . . environmental review would be a meaningless exercise." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 117.) Absent discretion to deny a permit, an agency has no duty to conduct a CEQA review, no matter what "terrible

5

environmental consequences" an EIR might reveal. (*Leach v. City of San Diego* (1990) 220 Cal.App.3d 389, 394.)

The law administered by an agency is "the litmus for differentiating between its discretionary and ministerial functions." (*People v. Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 192.) The agency may determine what acts are ministerial by analyzing its own laws (Cal. Code Regs., tit. 14, § 15268(a)), and its view of the scope and meaning of its own ordinance is entitled to great weight unless that view is clearly erroneous or unauthorized. (*Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1015.) Here, the law being administered by County is Chapter 8.40 of the County Code.

*4. The County Well Construction Ordinance*

Chapter 8.40 of the County Code addresses wells. This includes wells to extract water for irrigation. (*Id.,* § 8.40.020.)[2] The purpose of the chapter is to ensure that wells are constructed, repaired, modified or destroyed "in such a manner that the ground water of this county will not be contaminated or polluted and that water obtained from wells will be suitable for beneficial use and will not jeopardize the health, safety or welfare of the people of this county." (§ 8.40.010.)

Well permit applications submitted to the County must list the proposed well location, depth and use, and describe nearby property lines, sewage disposal systems, water courses or bodies, drainage patterns, existing wells, and access roads. Only licensed well drilling contractors may obtain permits. (§ 8.40.040(a), (c).)

---

[2] Unlabeled section references are to the San Luis Obispo County Code.

6

Well permits "shall be issued" if they comply with County and state standards. (§ 8.40.040(e).) County standards require specified well seal depths, which appellant concedes are ministerial. (§ 8.040.060(b).) Though groundwater extraction is limited in "the coastal zone" to satisfy the state Coastal Act (§ 8.040.065), appellant concedes that RPIs' wells are not within "the coastal zone." This leaves open only the question of whether state standards, set forth in DWR bulletins, require County to exercise discretion before issuing a well permit. (§ 8.040.060(a).)

> 5. *State DWR Standards Incorporated Into County Code Chapter 8.40*

County Code Chapter 8.40 incorporates DWR well standards. (§ 8.40.060(a).) DWR sets "minimum standards of well construction" (Wat. Code, § 231) to "protect the quality of water used or that may be used for any beneficial use." (*Id.*, § 13800.) Local agencies are required to adopt a well construction ordinance "that meets or exceeds the standards contained in [DWR] Bulletin 74.81." (*Id.*, § 13801, subd. (c).)

DWR Bulletin No. 74-81, entitled "Water Well Standards: State of California," reads: "To ensure the continued utility of our underground resources, they must be protected. Standards for both the construction of water wells and the destruction of abandoned wells can help protect ground water quality." It gives specifications for well construction, including the required distance between wells and sources of contamination (sewers, sewage leech fields, cesspools, animal enclosures); well seals; surface features; casing material, etc.

Bulletin No. 74-81 notes that careless well construction can create a physical connection between pollution (unsanitary and inferior-quality water) and usable water, citing "water-borne disease outbreaks," "undesirable chemicals, both toxic and nontoxic," and "seawater intrusion" as adverse effects on

7

groundwater.  The bulletin's construction standards aim to prevent "contamination and pollution" and ensure sanitary water quality.[3]

DWR Bulletin No. 74-7, from 1971, specifically addresses County.  It lists "high nitrate concentrations" in County groundwater—from waste disposal and use of fertilizers—as a source of public and private concern, and refers to a 1964 typhoid epidemic in Nipomo caused by the pollution of well water with septic tank wastes. The Bulletin adopts standards for the Arroyo Grande Basin "to prevent impairment of water quality" from improperly constructed, abandoned or defective wells.

6.    *County Code Chapter 8.40 Is Ministerial and Does Not Purport to Give County Any Discretion*

Section 8.40.040 (e) states that well permits "shall be issued" if state and County standards are met.  Appellant cites no case in which a landowner who wished to construct a well was subject to a full CEQA review requiring an environmental impact report.  Issuance of building permits "shall be presumed to be ministerial" under CEQA absent any discretionary provision in the ordinance.  (Cal. Code Regs., tit. 14, § 15268(b); *Friends of Juana Briones House v. City of Palo Alto* (2010) 190 Cal.App.4th 286, 302-303.)  A well building permit is a type of building

---

[3] Section 8.40.060(a) does not list DWR Bulletin No. 74-90, a supplement to Bulletin No. 74-81.  However, County admittedly uses Bulletin No. 74-90.  The supplement pursues the theme that "Improperly constructed . . . wells are a potential pathway for introducing poor quality water, pollutants, and contaminants to good-quality ground water" by allowing them to enter the well bore or pass into an aquifer.  While recommending "*minimum* statewide standards for the protection of ground water quality," Bulletin No. 74-90 notes that local agencies "may need to adopt more stringent standards for local conditions to ensure ground water quality protection."

permit. So long as technical standards and objective measurements are met, County must issue a well permit to licensed contractors. "To the extent that grant or denial of the construction permit is governed by fixed design and construction specifications in statute or regulation, the official decision of conformity or nonconformity leaves scant room for the play of personal judgment." (*People v. Department of Housing & Community Dev.*, *supra*, 45 Cal.App.3d at p. 193.)

Appellant concedes that County standards (relating to well seal depths) are ministerial, but argued below that state standards give County discretion to deny permits based on the cumulative depletion of groundwater.[4] However, state DWR standards incorporated into the County Code relate to ground water *quality*. The effect of RPIs' wells on ground water quality is not at issue here, and nothing in the DWR Bulletins gives County discretion to impose limitations on water usage. Indeed, DWR Bulletin No. 74-81 states that it is designed to protect groundwater utility; it is not designed to ensure "the effective use of these resources" through conservation. DWR Bulletin passages cited in appellant's brief expressly allude to "protection of groundwater *quality*," not depletion from overuse. (Italics added.)

The DWR Bulletins contain technical specifications. Appellant does not contend that the applicants here failed to satisfy the specifications. County did not impose extra conditions

---

[4] In its reply brief, appellant disclaims a goal of preserving water supplies. This contradicts appellant's argument to the trial court that the purpose of the ordinance "is to protect groundwater resources . . . not just quality, but . . . also supply." Counsel stated, "I think the intent of the standards is to protect the resources, to protect the groundwater supply both in terms of quality and sustainable use in the future."

9

beyond the standards imposed by the DWR Bulletins. (See *Day v. City of Glendale* (1975) 51 Cal.App.3d 817, 822-824 [city imposed discretionary safety conditions on a grading permit it issued to put landfill in 70 acres of canyon]; *Friends of Westwood v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 274 [city imposed discretionary conditions on a high-rise building permit because the project affected public streets outside the building].)

DWR Bulletin No. 74-81 allows localities to deviate from state standards and enact different standards for "unusual conditions." County did not deviate from DWR standards in adopting section 8.40.060(a): it reads, "Standards for the construction, repair, modification or destruction of wells shall be as set forth" in DWR Bulletins. The standards set forth in the Bulletins are technical requirements that do not call for the exercise of subjective judgment.

Appellant suggested in the trial court that County could impose additional conditions, for example, pump limits and subsidence monitoring. These are not authorized by Chapter 8.40, nor can we imply the possibility of imposing such conditions. Rules of statutory interpretation prevent us from rewriting laws. Our job "is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain . . . . [Courts] may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

The purpose of Chapter 8.40 is to prevent contamination or pollution of groundwater during well construction, repair, modification or destruction. Only an impermissible rewriting of the ordinance would allow us to infer a legislative intent to condition well permits on pump limits or subsidence monitoring, which have nothing to do with groundwater pollution. The

10

County has no discretion to impose water usage conditions on permits issued under Chapter 8.40.

Appellant's claim that County has *some* discretion in issuing well permits does not affect our analysis. "'CEQA does not apply to an agency decision simply because the agency may exercise *some* discretion in approving the project or undertaking. Instead to trigger CEQA compliance, the discretion must be of a certain kind; it must provide the agency with the ability and authority to "mitigate . . . environmental damage" to some degree.'" (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 934.)

The well permitting ordinance does not become discretionary merely because it states that an applicant must include any "information as may be necessary to determine if underground waters will be protected." (§ 8.40.040(a)(6).) The subcontext of this provision is whether underground waters will be protected from *contamination or pollution*. (§ 8.40.010.) The ordinance does not give County discretion to shape a well permit to mitigate potential environmental damage arising from groundwater overuse. The instruction to applicants to include all necessary information does not transform the inquiry into a discretionary review.

A new state law addresses groundwater *depletion*. The Legislature enacted the Sustainable Groundwater Management Act (SGMA) in 2014, empowering local agencies to adopt groundwater management plans tailored to community resources and needs. (Wat. Code, § 10720 et seq.) In 2015, County began implementing groundwater preservation measures. (E.g., County Ord. No. 3307 [requiring groundwater conservation in specified areas] and County Resolution No. 2015-288 [regarding a countywide water conservation program].) SGMA is not addressed in County Code Chapter 8.40, the law at issue here.

11

Appellant's concerns about groundwater sustainability do not empower the courts to rewrite County Code Chapter 8.40 to hasten appellant's legislative goals. Those goals must be addressed to County's elected officials as they implement SGMA.

Appellant did not and cannot plead a cause of action requiring County to comply with CEQA before issuing well permits under County Code Chapter 8.40. No aspect of that ordinance, or the DWR standards it incorporates, supports an interpretation that well permits are discretionary. Instead, the statutory scheme imposes fixed technical requirements. When those requirements are met—and appellant does not allege otherwise—issuance of a well permit is a ministerial act. CEQA does not apply to the ministerial act of issuing a well permit.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents, as the prevailing parties on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

12

Barry L. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

M.R. Wolfe & Associates and Mark R. Wolfe; Law Offices of Babak Naficy and Babak Naficy, for Petitioner and Appellant.

Rita L. Neal, Timothy McNulty and Erica A. Stuckey, County Counsel, for Respondents County of San Luis Obispo, et al.

Roll Law Group, Courtney Vaudreuil, Johnny Traboulsi, Sophie-Nic Froelich and Robert Donnelly Thornton, for Real Party in Interest and Respondent Justin Vineyards and Winery, LLC.

Stoel Rives, Timothy M. Taylor, Carissa M. Beecham, Wesley A. Miliband and Eric R. Skanchy, for Real Party in Interest and Respondent Lapis Land Company, LLC.

Adamski Moroski Madden Cumberland & Green, Thomas D. Green and Michelle L. Gearhart, for Real Parties in Interest and Respondents Paso Robles Vineyards, Inc. and Moondance Partners, LP.

13

Filed 7/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA WATER IMPACT NETWORK,<br><br>   Petitioner and Appellant,<br><br><br>v.<br><br>COUNTY OF SAN LUIS OBISPO et al,<br><br>   Respondents,<br><br><br><br>JUSTIN VINEYARDS AND WINERY, LLC et al.<br><br><br><br>   Real Parties in Interest and Respondents. | 2d Civil No. B283846<br><br>(Super. Ct. No. 16CVP-0195)<br><br>(San Luis Obispo County)<br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on June 28, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

14