Filed 8/21/20  P. v. Amirian CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH AMIRIAN,<br><br>Defendant and Appellant. | B298094<br><br>(Los Angeles County<br>Super. Ct. No. GA087122) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Smerling, Judge.  Affirmed.

Law Offices of James Koester and James Koester for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

In 2012, appellant Joseph Amirian pled no contest to two counts of practicing physical therapy without a license (Bus. & Prof. Code, § 2052, subd. (a).) In 2014, after finding Amirian had fulfilled the conditions of his probation, the court allowed Amirian to withdraw his no-contest plea and dismissed the charges against him pursuant to Penal Code[1] section 1203.4, subdivision (a).

In 2019, Amirian brought a motion pursuant to section 1473.7, subdivision (a)(1), which permits a noncitizen defendant who is no longer in custody to move to vacate a conviction and to withdraw his or her plea as legally invalid if the defendant's ability to meaningfully understand "the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere" has been damaged "due to prejudicial error." The superior court denied Amirian's motion, and Amirian appealed.

Amirian contends on appeal that: (1) he was entitled to presumptive relief under section 1473.7, subdivision (e)(2); (2) even without presumptive relief, he was otherwise entitled to relief under section 1473.7, subdivision (a)(1), based on prejudicial error; and (3) the trial court's immigration advisement prejudicially deviated from the statutory language of section 1016.5. We discern no error by the trial court and affirm the order.

---

[1] Further undesignated statutory references are to the Penal Code.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background and Charges*

Amirian, a permanent resident of the United States, was a licensed physical therapist. In 2008, Amirian's physical therapy license was revoked as a result of a misdemeanor forgery conviction.[2]

For reasons not appearing in the record, Amirian's license was suspended for one year, from August 2010 through August 2011. On five occasions during this period, Amirian treated a patient using another physical therapist's identity.

In a 10-count felony complaint filed on August 21, 2012, the People charged Amirian with five counts of practicing physical therapy without a license (Bus. & Prof. Code, § 2052, subd. (a)) and five counts of forging another person's name to a medical record (§ 470, subd. (a)).

### B. *Amirian's Plea and Sentence*

On December 19, 2012, prior to the preliminary hearing, Amirian agreed to plead no contest to two felony counts of practicing physical therapy without a license. At the plea hearing, the court advised Amirian there were "certain consequences that will follow from your pleas of no contest. If you're not a citizen, you would be deported, be denied re-entry if you leave the country, denied naturalization." The court inquired whether Amirian was entering his plea because he believed it was in his "best interest to do so," and Amirian responded, "That's correct, your honor." Amirian's attorney stated: "I want the record to show there are potential immigration consequences.

---

[2] In 2009, the conviction was vacated and dismissed under section 1203.4.

3

My client and I have discussed that. He has an immigration lawyer." Amirian confirmed his understanding of the consequences of his plea. After finding Amirian had entered the plea knowingly and intelligently, the court suspended imposition of sentence and placed Amirian on probation for three years. All other counts were dismissed.

## C.    *Section 1203.4 Relief*

In 2014, the court granted Amirian's motion for relief under sections 17 and 1203.4, after finding he had complied with all the terms of probation. Under section 17, the court terminated his probation and deemed the two offenses to be misdemeanors. (See § 17, subd. (b).) Under section 1203.4, the court allowed Amirian to withdraw his no-contest plea and dismissed the charges.[3] (See § 1203.4, subd. (a)(1).).

## D.    *Section 1473.7 Motion to Vacate Conviction*

On January 24, 2019, Amirian filed an unopposed motion for relief under section 1473.7, which permits a person who is no longer in criminal custody to file a motion to vacate a conviction or sentence if he or she was unable to understand the actual or potential adverse immigration consequences of a plea of guilty or no contest. The motion explained that an expungement under section 1203.4 does not nullify a conviction for immigration

---

[3]    The "expungement" provided by section 1203.4 is limited. In a subsequent prosecution, "the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." (§ 1203.4, subd. (a)(1).) The defendant must also disclose the conviction in certain contexts, such as when applying for public office or for licensure with a state or local agency. (*Ibid*.)

4

purposes,[4] and thus Amirian's application for green card renewal and future citizenship could be denied as a result of his conviction. The motion further stated that Amirian had recently learned that if he had pled to a different Business and Professions Code offense, his conviction could ultimately have been reduced to an infraction,[5] which allegedly was not a conviction for immigration purposes. Amirian claimed that, at the time of his plea, he did not understand the difference. In short, he urged that the alleged prejudicial error was the failure to negotiate a plea deal that would ultimately result in infractions and not jeopardize his chances at citizenship.

In support of the motion, Amirian presented the declarations of an immigration attorney, Roger Gleckman, and a licensing attorney. They explained that vacation of the convictions would enhance Amirian's prospects of regaining his physical therapy license and obtaining a favorable immigration disposition. Amirian's own declaration stated he would suffer adverse immigration consequences as a result of his convictions. Gleckman had advised Amirian that his application for green

---

[4] See *People v. Martinez* (2013) 57 Cal.4th 555, 560 (*Martinez*), citing *Ramirez-Castro v. INS* (9th Cir. 2002) 287 F.3d 1172, 1174–1175; *People v. Holman* (2013) 214 Cal.App.4th 1438, 1465, 1468 (*Holman*); *People v. Frawley* (2000) 82 Cal.App.4th 784, 791.

[5] "An infraction is a relatively minor violation of law, which cannot result in imprisonment or loss of liberty, and as distinguished from a felony or a misdemeanor, does not result in the right of a jury trial." (*People v. Kus* (2013) 219 Cal.App.4th Supp. 17, 21; Pen.Code, § 17.)

card renewal and future citizenship "could be denied as a result of this conviction."

Amirian declared: "I have since found out that there are a list of similar charges that are reducible to infractions, and that if I had pled to a charge that could later be reduced to an infraction, that an infraction would not be considered a criminal offense under federal immigration law. [¶] If, at the time of the plea, I had understood that there was an alternative charge to which I could have pled that would have ultimately been reducible to an infraction, I would have asked my attorney to negotiate a plea to one of those offenses. [¶] Unfortunately, Mr. Gleckman has informed me that an expungement does not get rid of the conviction under federal immigration law."

Amirian also explained that he and his family had escaped persecution in Iraq and arrived in the United States when he was 15 years old. His parents became United States citizens, but they were elderly with health problems, and Amirian lived with them and took care of them. He considered the United States to be his home country.

### E.     *Hearing and Disposition*

At the hearing on March 22, 2019, no testimony was heard. The trial judge remarked that Amirian's "conduct [which led to his plea] was egregious. He had a prior incident . . . where his license got suspended[.]" Defense counsel argued that Amirian had not understood, for immigration purposes, the difference between a disposition that resulted in an expungement as opposed to an infraction. The trial judge responded that the likelihood of Amirian obtaining a plea deal of an infraction was a "complete [pie] in the sky," and Amirian's attorney at the time of

the plea had secured an "excellent disposition." The court denied the motion, and Amirian timely appealed.[6]

## III. DISCUSSION

We conclude the trial court did not abuse its discretion in denying Amirian's section 1473.7 motion because: (1) Amirian was not entitled to presumptive relief under section 1473.7, subdivision (e)(2); (2) Amirian has not demonstrated he suffered prejudicial error pursuant to section 1473.7, subdivision (a)(1); and (3) the court's immigration advisement substantially complied with the requirements of section 1016.5.

### A.    *Legal Standards*

Section 1473.7, which took effect January 1, 2017, authorizes a noncitizen defendant who is no longer in criminal custody to move to vacate a conviction or sentence when the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1), added by Stats. 2016, ch. 739, § 1 (AB 813), effective January 1, 2017.)

Effective January 1, 2019, section 1473.7 was amended to impose a presumption of legal invalidity for pleas made pursuant to certain qualifying statutes: "There is a presumption of legal invalidity for the purposes of paragraph (1) of subdivision (a) if the moving party pleaded guilty or nolo contendere pursuant to a statute that provided that, upon completion of specific

---

[6]    An order denying a motion brought under section 1473.7 is appealable as an order after judgment affecting the substantial rights of the party. (§ 1473.7, subd. (f); § 1237, subd. (b).)

7

requirements, the arrest and conviction shall be deemed never to have occurred, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration consequences." (§ 1473.7, subd. (e)(2), as amended by Stats. 2018, ch. 825, § 2.)

Assuming no presumption of legal invalidity applies, a court must grant the section 1473.7 motion "if the moving party establishes, by a preponderance of the evidence," the grounds for relief under subdivision (a)(1).[7] (§ 1473.7, subd. (e)(1).) The only finding required under subdivision (a)(1) is "whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (e)(4), as amended by Stats. 2018, ch. 825, § 2.)

If the court grants a section 1473.7 motion to vacate a conviction obtained through a plea of guilty or nolo contendere, the court must allow the moving party to withdraw his or her plea. (§ 1473.7, subd. (e)(3).)

---

[7] A party moving for relief under subdivision (a)(1) must "establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1), as amended by Stats. 2018, ch. 825, § 2.) The People do not challenge Amirian's alleged standing to petition for section 1473.7 relief under that standard.

8

***B.*** *Amirian Has Not Demonstrated He Is Entitled to a Presumption of Legal Invalidity Under Section 1473.7, Subdivision (e)(2).*

Amirian contends he is entitled to a presumption that his plea was legally invalid under section 1473.7, subdivision (e)(2). For the reasons that follow, the contention is without merit.

**1. Amirian Did Not Enter His Plea "Pursuant to" a Qualifying Statute, and Thus He Was Not Entitled to a Presumption of Legal Invalidity Under the Plain Terms of Section 1473.7, Subdivision (e)(2).**

The construction and interpretation of a statute is a question of law that we consider de novo on appeal. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95–96.) We begin by examining the plain, ordinary words of the statute as an indicator of legislative intent, and if the statutory language is clear and unambiguous, we do not indulge in further statutory construction. (*People v. Colbert* (2019) 6 Cal.5th 596, 603 [" ' "if the statutory language is not ambiguous, then . . . the plain meaning of the language governs" ' "]; *People v. Manzo* (2012) 53 Cal.4th 880, 885 (*Manzo*) ["the plain, commonsense meaning of the words in the statute" is " ' "generally the most reliable indicator of legislative intent and purpose" ' " and when the " 'language of a statute is clear, we need go no further' "].) "Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

As relevant here, section 1473.7, subdivision (e)(2), creates a presumption of legal invalidity "if the moving party pleaded guilty or nolo contendere *pursuant to a statute that provided that,*

9

upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration consequences." (§ 1473.7, subd. (e)(2), italics added.)

By the plain language of subdivision (e)(2), Amirian did not enter his plea "pursuant to" a qualifying statute. (See § 1473.7, subd. (e)(2).) Amirian's plea was based on a violation of Business and Professions Code section 2052, subdivision (a), which describes the elements of the unauthorized practice of medicine, including physical therapy. (See Bus. & Prof. Code, § 2052, subd. (a).) Business and Professions Code section 2052, subdivision (a), does not provide that "upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred," as required by section 1473.7, subdivision (e)(2). (Bus. & Prof. Code, § 2052, subd. (a); § 1473.7, subd. (e)(2).) Because Amirian cannot establish that his plea was "pursuant to" a statute that satisfied the requirements of section 1473.7, subdivision (e)(2), he is not entitled to a presumption under that subdivision that his plea was legally invalid.

**2.     Amirian's Expansive Interpretation of Section 1473.7, Subdivision (e)(2), Is Inconsistent with the Terms of the Statute.**

Amirian contends his plea was presumptively illegal because section 1473.7, subdivision (e)(2), was "meant to apply to convictions, such as appellant's, in which the conditions of the plea contemplate the defendant's ability to ultimately dismiss the accusatory pleading under . . . section 1203.4, subdivision (a)." In effect, Amirian characterizes his plea as one made "pursuant to"

10

section 1203.4. We reject Amirian's proposed expansion of subdivision (e)(2) to encompass all "section 1203.4 eligible pleas."[8] Neither the terms of the statute nor the circumstances of Amirian's plea support the conclusion that his plea was entered "pursuant to" section 1203.4.

Section 1203.4 provides that under certain circumstances, such as when a defendant has fulfilled the conditions of probation, he or she shall "be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted [ ], he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." (§ 1203.4, subd. (a)(1).) " 'A grant of relief under section 1203.4 is intended to reward an individual who successfully completes probation by mitigating some of the consequences of his conviction and, with a few exceptions, to restore him to his former status in society to the extent the Legislature has power to do so [citations].' [Citation.]" (*People v. Field* (1995) 31 Cal.App.4th 1778, 1787.)

---

[8] Because we reject Amirian's preliminary contention that section 1473.7, subdivision (e)(2), encompasses "section 1203.4 eligible pleas," and that his plea was therefore "pursuant to" section 1203.4, we need not reach the secondary issue presented: whether section 1203.4 is a statute which meets the requirement of section 1473.7, subdivision (e)(2), that "the arrest and conviction shall be deemed never to have occurred." (See § 1473.7, subd. (e)(2).)

Amirian asserts that "implied within a plea in which the defendant is granted probation is an implied expectation that if the defendant successfully completes the probation, he or she will be eligible for the relief offered in . . . section 1203.4."**9** Thus, according to Amirian, section 1473.7, subdivision (e)(2), was intended to apply to all "section 1203.4 eligible pleas," even if the plea was entered "pursuant to" a different underlying statute. But Amirian's broad reading of subdivision (e)(2) changes its scope and impermissibly adds to its terms. If there is no ambiguity in the statutory language, a court must presume the Legislature " 'meant what it said, and the plain meaning of the language governs.' " (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268; *Manzo, supra*, 53 Cal.4th at p. 885.) As a corollary, courts " 'may not rewrite the statute to conform to an assumed intention that does not appear in its language.' " (*California Water Impact Network v. County of San Luis Obispo* (2018) 25 Cal.App.5th 666, 678 (*California Water*); see also *Farnow v. Superior Court* (1990) 226 Cal.App.3d 481, 486 ["a court may not rewrite a law, supply an omission or give words an effect different from the plain and direct import of the terms used"].) In interpreting section 1473.7, subdivision (e)(2), our job " 'is simply to ascertain and declare what the statute contains,

---

**9** Amirian relies on *Holman* for this point, which did not address section 1473.7, subdivision (e)(2). Although *Holman* observed that " 'plea bargains may contain implied terms,' " the *Holman* defendant's expectation of section 1203.4 relief was not "implied," but clearly articulated in a contract she signed as part of her plea bargain. (*Holman, supra*, 214 Cal.App.4th at pp. 1472–1474.)

not to change its scope by reading into it language it does not contain.' " (*California Water*, at p. 678.)

A literal, commonsense reading of section 1473.7, subdivision (e)(2), is inconsistent with Amirian's attempted amplification to include pleas purportedly made with "an implied expectation" of section 1203.4 relief.[10] We interpret subdivision (e)(2) according to its plain, ordinary terms, without reading into it words or assumed meanings it does not contain. (See *California Water*, *supra*, 25 Cal.App.5th at p. 678.) As a threshold requirement, section 1473.7, subdivision (e)(2), clearly says the plea must have been made "pursuant to" a qualifying statute—not pursuant to a *future* qualifying statute impliedly contemplated at the time of the plea. (See § 1473.7, subd. (e)(2).) We have already determined that Amirian's plea was to a violation of Business and Professions Code section 2052, subdivision (a), which is not a qualifying statute under section 1473.7, subdivision (e)(2). Thus, Amirian is not entitled to a presumption that his plea was legally invalid.

We are not persuaded by Amirian's arguments regarding public policy and the legislative intent to broadly provide relief to noncitizen defendants who may be suffering adverse immigration consequences as a result of their unintended pleas. Amirian urges us to consider legislative history and analogous diversion

---

[10] Indeed, we are doubtful the Legislature would have intended the result Amirian advances here by proposing that inherent in every plea resulting in probation is an implied expectation of section 1203.4 relief, which would empower any defendant who successfully completes probation and is granted section 1203.4 relief to move to vacate his or her conviction as presumptively invalid under section 1473.7, subdivision (e)(2).

13

statutes, applying general principles of statutory construction that favor granting broad relief "to ameliorate a defendant's reliance upon ambiguous statutory language."  But the statutory ambiguities that are his focus are within section 1203.4, not section 1473.7.  Because section 1473.7, subdivision (e)(2), is clear and unambiguous in its intended scope, it is " ' " '[not] necessary to resort to [extrinsic] indicia of the intent of the Legislature.' " ' " (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 419; see also *Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 326 ["courts will not 'interpret away clear language in favor of an ambiguity that does not exist' "].)  We are mindful that " '[c]rafting statutes to conform with policy considerations is a job for the Legislature, not the courts.' " (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2005) 128 Cal.App.4th 307, 316.)

Finally, the record does not support Amirian's contention that "the conditions of the plea contemplate[d]" section 1203.4 relief.  We find no evidence that Amirian's plea was "induce[d]" by a promise or agreement to seek section 1203.4 relief in the future.  There is no indication that section 1203.4 was discussed at the plea hearing, or that it was a part of the negotiated plea deal.  The only evidence Amirian adduces is a statement in his 2019 declaration in support of the section 1473.7 motion: "Unfortunately, Mr. Gleckman has informed me that an expungement does not get rid of the conviction under federal immigration law."  But this statement does not support the proposition that, seven years earlier, Amirian was misled into entering his plea with the expectation that he would ultimately obtain the benefits of section 1203.4.  Amirian's expansive interpretation of section 1473.7, subdivision (e)(2), is neither

14

supported by the language of the statute nor the circumstances of his plea.

### C.     The Court Did Not Abuse Its Discretion by Denying Amirian's Request for Relief Pursuant to Section 1473.7, Subdivision (a)(1), Because He Has Not Demonstrated Prejudicial Error.

Even if a defendant is not entitled to presumptive relief under section 1473.7, subdivision (e)(2), he may nonetheless seek relief pursuant to section 1473.7, subdivision (a)(1).  That section authorizes a noncitizen defendant who is no longer in criminal custody to move to vacate a conviction or sentence when the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  (§ 1473.7, subd. (a)(1).)

As relevant here, the defendant bears the burden of establishing two elements of "prejudicial error": (1) he failed to "meaningfully understand" or "knowingly accept" the actual or potential adverse immigration consequences of his plea; and (2) had the defendant understood the consequences, it is "reasonably probable" he or she would not have entered the plea. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*); *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133 (*DeJesus*).)  The focus of the inquiry is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia,* at p. 866; see also *People v. Camacho* (2019) 32 Cal.App.5th 998, 1010 (*Camacho*).)

When an order denying a section 1473.7 motion to vacate a conviction is challenged based on statutory error, without a

15

claimed deprivation of a constitutional right, our review is for abuse of discretion.[11] (See *People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977–978; *People v. Vivar* (2019) 43 Cal.App.5th 216, 231; *Ogunmowo, supra,* 23 Cal.App.5th at p. 76.) Under this standard, we must decide " 'whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 578.)

### 1. Substantial Evidence Supports the Trial Court's Conclusion That Amirian Understood the Immigration Consequences of His Plea.

In seeking to vacate his plea, Amirian alleges that he entered his plea under the mistaken belief that his convictions would have no immigration consequences. To establish error, Amirian must show his or her failure to " 'meaningfully understand' " or " 'knowingly accept' " the actual or potential adverse immigration consequences of the plea. (*Mejia, supra,* 36 Cal.App.5th at p. 862; *DeJesus, supra,* 37 Cal.App.5th at p. 1133.)

Substantial evidence supports the court's conclusion that Amirian understood the immigration consequences of his plea. As reflected in the reporter's transcript and minute order from the plea hearing, the trial court expressly advised Amirian that his plea "will" result in immigration consequences and "would"

---

[11] Although Amirian proposes that the applicable standard of review is de novo, most cases applying that standard have involved claims of ineffective assistance of counsel implicating a defendant's constitutional rights. (See, e.g., *People v. Tapia* (2018) 26 Cal.App.5th 942, 950; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76 (*Ogunmowo*).)

lead to his potential deportation, denial of re-entry, and denial of naturalization. Amirian's attorney indicated on the record that he had discussed the "potential immigration consequences" with his client, who had also consulted an immigration attorney. The court reasonably concluded that Amirian was sufficiently informed of any adverse immigration consequences at the plea hearing. Amirian and his attorney confirmed his understanding of those consequences, and Amirian affirmed he was entering the plea knowingly and intelligently because it was in his best interest. (See *People v. Perez* (2018) 19 Cal.App.5th 818, 829–830 [no lack of "meaningful[ ] understand[ing]" where defense counsel and trial court unequivocally explained immigration consequences, and defendant affirmed his understanding].) On this record, the trial court properly concluded that Amirian failed to demonstrate error within the meaning of section 1473.7, subdivision (a)(1), by establishing he did not "meaningfully understand" or "knowingly accept" the immigration consequences of his plea.

Amirian relies on *Camacho* and *Mejia* to establish his "subjective unawareness" of the immigration consequences of his plea, but those cases are distinguishable. The *Camacho* defendant, who was undocumented, pled no contest to an aggravated felony conviction, which subjected him to mandatory deportation. (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1001–1002, 1004.) At the time of his plea, his attorney informed him he would avoid jail time if he entered his plea, but did not discuss the immigration consequences of his plea, offer other alternatives, or direct him to consult an immigration attorney. (*Id*. at pp. 1001–1002.) Camacho submitted a declaration and testified that he would not have entered the plea if he had known

17

it would prevent him from obtaining legal status in the United States.  (*Ibid*.)  On that record, the court concluded Camacho did not " 'meaningfully understand' " or " 'knowingly accept' " the mandatory immigration consequences of his plea.  (*Id*. at p. 1009.)

Similarly, the *Mejia* defendant was facing mandatory deportation following his plea of guilty to three aggravated felonies.  (*Mejia*, *supra*, 36 Cal.App.5th at pp. 862, 865.)  His attorney advised that he "had no choice but to take the deal," and did not discuss the immigration consequences of his plea.  (*Id*. at p. 863.)  Mejia testified that he would not have entered the plea if properly advised.  (*Id*. at p. 865.)  As in *Camacho*, the *Mejia* court concluded the defendant did not " 'meaningfully understand' " or " 'knowingly accept' " the dire immigration consequences of his plea.  (*Id*. at p. 872.)

As we have discussed, the circumstances surrounding Amirian's plea were significantly different from *Camacho* or *Mejia*.  Amirian was advised of the immigration consequences of his plea by his defense attorney, his immigration attorney, and the trial court.  Thus, substantial evidence supported the trial court's finding that Amirian failed to demonstrate that he did not understand the immigration consequences of his plea.

**2.** **Substantial Evidence Supports the Trial Court's Conclusion That It Was Not Reasonably Probable Amirian Would Have Rejected the Bargained Plea.**

As we have said, to be entitled to relief under section 1473.7, subdivision (a)(1), Amirian had to show not only that he did not understand the immigration consequences of his plea, but also that he would have rejected the plea had he been aware of its immigration consequences.  (*Mejia*, *supra*, 36 Cal.App.5th at

18

pp. 872–873; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1009–1012.) This analysis does not simply consider whether it is " 'reasonably probable the defendant by rejecting the plea would have obtained a more favorable outcome,' " but whether the defendant " 'would have chosen to lose the benefits of the plea bargain despite the possibility or probability [immigration consequences] would nonetheless follow.' " (*Camacho*, *supra*, 32 Cal.App.5th at p. 1010, citing *Martinez*, *supra*, 57 Cal.4th at p. 565.) As relevant to this case, the defendant must establish that he or she "would have rejected an existing plea offer in the hope or expectation that he or she might thereby negotiate a different bargain." (*Martinez*, at p. 567.)

Because the burden to show prejudice is on the defendant, "the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised." (*Martinez*, *supra*, 57 Cal.4th at p. 565; see also *Camacho*, *supra*, 32 Cal.App.5th at pp. 1001–1002, 1011 [declaration and testimony established defendant resided in United States over 30 years, financially supported wife and children who were United States citizens, and would not have entered plea if properly advised]; *Mejia*, *supra*, 36 Cal.App.5th at pp. 863–865, 872; *Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 73, 78 [declaration stated " 'I would have rejected the plea agreement had I known I could be subject to immigration sanctions' "].) "It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*Martinez*, at p. 565.)

" 'Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded

19

. . . . [Rather, they] should look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*DeJesus, supra*, 37 Cal.App.5th at p. 1134, citing *Jae Lee v. United States* (2017) 582 U.S. __, __ [137 S.Ct. 1958, 1967] (*Lee*); *Mejia, supra*, 36 Cal.App.5th at p. 872.) Courts have found, for example, that an immigration attorney's declaration that the defendant sought his advice prior to entering a plea and the attorney's acknowledgment that the advice given was wrong (*Ogunmowo, supra*, 23 Cal.App.5th at p. 73), or the strength of a defendant's personal connections to the United States, corroborated the defendant's expressed preference for avoiding a plea that carried serious immigration consequences. (See *Lee*, at p. 1968; *Ogunmowo*, at pp. 78–79; *Mejia*, at pp. 863–865; *Camacho, supra*, 32 Cal.App.5th at pp. 1011–1012.)

Amirian's declaration falls short of the unequivocal statement required to establish prejudice, and his expressed preference for an alternative immigration-safe disposition is uncorroborated by substantial evidence. A party seeking to establish prejudice under section 1473.7 must "establish[ ] he or she would have *rejected* the existing plea bargain to accept or attempt to negotiate another." (*Martinez, supra*, 57 Cal.4th at p. 559, italics added.) Amirian failed to make this necessary showing in his declaration, which simply stated: "If, at the time of the plea, I had understood that there was an alternative charge to which I could have pled that would have ultimately been reducible to an infraction, I would have asked my attorney to negotiate a plea to one of those offenses." The trial court was entitled to conclude that Amirian's declaration was too speculative, attenuated, and unsupported by evidence contemporaneous to his plea. There is no evidence that Amirian's

20

prevailing concern at the time of the plea hearing was avoiding immigration consequences. (See *Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 70, 78–79; *Lee*, *supra*, 582 U.S. __ at pp. __, __ [137 S.Ct. at pp. 1960, 1967–1968].) Amirian did not identify which alternative Business and Professions Code offense he would have been eligible for, nor did he present any evidence that—in light of his earlier 2008 conviction—an infraction or alternative disposition devoid of immigration consequences was available to him. (See *DeJesus*, *supra*, 37 Cal.App.5th at pp. 1135–1136 [no prejudicial error where defendant failed to identify or offer corroborating evidence of any " 'immigration-neutral disposition to which the prosecutor was reasonably likely to agree' "].)

Other factors weigh against a finding that Amirian would not have entered his plea had he understood its immigration consequences. Although Amirian argues on appeal that he was prejudiced by his mistaken understanding of the immigration consequences of expungement under section 1203.4, nothing in the record indicates this mistaken understanding induced his plea. There is no evidence that section 1203.4 was discussed at the plea hearing, or that Amirian anticipated when he entered his plea that he would seek section 1203.4 relief in the future. Further, Amirian cannot demonstrate prejudice from his acceptance of a plea bargain that resulted in a better resolution than he was otherwise likely to obtain. (See *Lee*, *supra*, 582 U.S. __ at p. __ [137 S.Ct. at p. 1966 [defendant who is "highly likely to lose at trial . . . will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution."].) Unlike the defendants in the cited cases who were found to have suffered prejudice, Amirian was not subject to mandatory

21

deportation or prison time, or prevented from becoming a permanent resident, as a result of his plea. (See *Camacho*, *supra*, 32 Cal.App.5th at p. 1002, 1004; *Mejia*, *supra*, 36 Cal.App.5th at p. 865; *Martinez*, *supra*, 57 Cal.4th at p. 560; *Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 71, 73; *Lee*, at p. 1963.) In other words, Amirian's bargained plea—reducing ten felony counts to two, which resulted in no prison time—yielded clear benefits, and Amirian has not shown he would have rejected them due to immigration concerns.

Amirian contends the trial court abused its discretion by focusing exclusively on the unlikelihood that Amirian would have obtained a more favorable disposition, and committed error by basing its decision on the absence of ineffective assistance of counsel. But the probability of obtaining a more favorable disposition, whether through trial or further negotiation, is inevitably a part of the defendant's decision whether to plead guilty or no contest. (See *Martinez*, *supra*, 57 Cal.4th at pp. 564, 567 [that a more favorable result was not reasonably probable is a factor for the trial court to consider when assessing the credibility of a defendant's claim that he or she would have rejected the plea bargain if properly advised]; *Mejia*, *supra*, 36 Cal.App.5th at p. 872.) The court considered Amirian's prior criminal record and noted that his attorney had obtained an excellent disposition, concluding there was insufficient evidence that Amirian would have rejected his bargained plea to attempt to negotiate another. The court's remarks are not indicative of a finding based on the effectiveness of counsel, but rather, based on an assessment of prejudice.

In short, we cannot conclude that Amirian met his burden of establishing by a preponderance of the evidence that he

22

entered a plea that was legally invalid due to prejudicial error. Accordingly, the trial court did not abuse its discretion in denying section 1473.7 relief.

**D.    *The Trial Court Substantially Complied with Section 1016.5.***

Lastly, Amirian contends that the trial court's immigration admonishments did not comply with the statutory language of section 1016.5, and thus prejudiced his understanding of the immigration consequences of his plea.  For the reasons that follow, the claim is without merit.

As an initial matter, we conclude that Amirian forfeited this contention by failing to raise it in the trial court.  Generally, an appellate court will not consider a challenge to a trial court's ruling if the aggrieved party could have, but did not, timely object in the trial court.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 691; *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  Amirian failed to raise section 1016.5 compliance in the trial court, and thus we need not consider it on appeal.

Alternatively, we find that Amirian's contention fails on the merits because the court substantially complied with the statutory requirements.  Section 1016.5 provides that prior to acceptance of a noncitizen defendant's plea, the trial court must administer the following advisement on the record: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  (§ 1016.5, subd. (a).)  If the court fails to comply, the court must vacate the judgment and permit the defendant to withdraw his or her plea.  (§ 1016.5, subd. (b).)

"To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement." (*People v. Totari* (2002) 28 Cal.4th 876, 884.) "On the question of prejudice, defendant must show that it is reasonably probable he would not have pleaded guilty or nolo contendere if properly advised." (*Ibid.*)

Section 1016.5 requires that a defendant be "specifically advised of all three separate immigration consequences of his plea"—deportation, exclusion from admission, and denial of naturalization. (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 174 (*Gutierrez*).) Amirian's challenge pertains to the second consequence regarding exclusion from admission to the United States. He alleges the trial court's advisement materially differed from section 1016.5 by stating: "If you're not a citizen, you would be deported, be denied re-entry if you leave the country, denied naturalization." Specifically, Amirian alleges he was prejudiced by the court's omission of the phrase "exclusion from admission," which is a term of art within the federal Immigration and Nationality Act (8 U.S.C. § 1101 et seq.) and not equivalent to a "deni[al of] re-entry," rendering his plea legally invalid under section 1473.7. We disagree.

The court's advisement substantially complied with section 1016.5. Under similar circumstances, the defendant in *Gutierrez* was advised he would be " 'denied re-entry' " as a result of his plea. (*Gutierrez, supra,* 106 Cal.App.4th at p. 171.) *Gutierrez* concluded that "substantial, not literal, compliance with section

24

1016.5 is sufficient" and "the phrase 'denied re-entry' is the legal equivalent of 'exclusion of admission.' " (*Id.* at pp. 169, 174 & fn. 4; see also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 207 [noting courts have held that " '[t]he exact language of the advisement is not crucial' "].) Although Amirian characterizes the *Gutierrez* court's latter conclusion as dicta, it was essential to the holding that the trial court had substantially complied with section 1016.5.

Amirian also attempts to distinguish *Gutierrez* because of the *Gutierrez* trial court's curative use of a written advisement form in accepting the plea. (See *Gutierrez, supra,* 106 Cal.App.4th at pp. 174–175.) But *Gutierrez* considered the written advisement form as an *additional* ground for denying section 1016.5 relief, only after concluding that the trial court's oral advisement substantially complied with the statute. (*Ibid.*) Thus, the written advisement form was not central to the court's decision, nor is it mandated by the language of section 1016.5. (See § 1016.5, subd. (a) [advisement must be "on the record"]; *People v. Ramirez* (1999) 71 Cal.App.4th 519, 522 ["So long as the advisements are given, the language of the advisements appears in the record for appellate consideration of their adequacy, and the trial court satisfies itself that the defendant understood the advisements and had an opportunity to discuss the consequences with counsel, the legislative purpose of section 1016.5 is met."].)

Finally, Amirian urges us to reject *Gutierrez* because "admission" is a term of art under the Immigration and Nationality Act and does not apply to all circumstances in which a permanent resident re-enters the United States. For example, as Amirian explains, a permanent resident "shall not be regarded as seeking an admission into the United States for purposes of

25

the immigration laws unless the alien . . . [¶] (ii) has been absent from the United States for a continuous period in excess of 180 days." (8 U.S.C. § 1101(a)(13)(C)(ii).) Without citation to authority, Amirian argues that "the use of the term denied re-entry would reasonably cause a legally present alien resident to conclude that he or she was unable to ever leave the boundaries of the country for fear that any absence would bar his or her re-admittance to the United States."

However, the Immigration and Nationality Act defines "admission" as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." (8 U.S.C. § 1101(a)(13)(A).) By definition, "admission" and "entry" are virtually synonymous. Moreover, section 1016.5 does not require the trial court to advise the defendant of any "additional immigration consequences" beyond the three major consequences set forth in the statute. (See *People v. Arendtsz* (2016) 247 Cal.App.4th 613, 618–619 ["[n]othing in section 1016.5 requires more than advisement of the three major consequences of a plea that are specified in subdivision (a)"].) The trial court substantially complied with section 1016.5 by putting Amirian on sufficient notice of the three major immigration consequences of his plea.[12]

---

[12]   Courts have employed the same standards for analyzing prejudice in reviewing section 1016.5 and section 1473.7 motions. (See *Martinez, supra*, 57 Cal.4th at p. 559; *Camacho, supra*, 32 Cal.App.5th at p. 1010.) Amirian cannot establish that he would not have entered his plea even if he had been advised with the exact language of section 1016.5, for reasons we have already discussed pertaining to his section 1473.7 motion.

# IV. DISPOSITION

The order of the trial court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

DHANIDINA, J.

27